IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

```
MALIA BENSON and MICHAEL BENSON,  )
                                  )    2:08-cv-331-GEB-EFB
               Plaintiffs,        )
                                  )
     v.                           )    ORDER*
                                  )
UNION PACIFIC RAILROAD COMPANY,   )
                                  )
               Defendant.         )
_____)
```

    Defendant Union Pacific Railroad Company moves to dismiss Plaintiffs Malia Benson and Michael Benson's Second Amended Complaint. The allegations in Plaintiffs' complaint concern toxic lead dust which blows from Defendant's rail yard onto Plaintiffs' property. Defendant argues Plaintiffs' nuisance, trespass and negligence claims are barred by statutes of limitation and are preempted by federal law. Defendant also moves to strike Plaintiffs' request for damages which is premised

---

    * This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

on a risk of developing a disease from exposure to the lead in the dust.  Plaintiffs oppose the motions.

PLAINTIFFS' FACTUAL ALLEGATIONS

Defendant operates a rail yard across the road from Plaintiffs' residential property. (Second Am. Compl. ("SAC") ¶¶ 5-6.) More than 30,000 locomotives travel through the rail yard annually. (Id. ¶ 7.)  The rail yard is unpaved and the dust from the yard becomes airborne and blows from the yard onto Plaintiffs' property. (Id. ¶¶ 15-16.)  Plaintiffs must vacuum their residence "on a daily basis due to the accumulated dust in the home." (Id. ¶ 16.)

In 2004, a state agency conducted a study analyzing the diesel emissions from the locomotives. (Id. ¶ 8.)  In 2007, the state agency conducted a second study which analyzed both the diesel emissions from the locomotives and the dust blowing from the surface of the rail yard. (Id. ¶ 14.)  The latter study found that the dust contained "high levels of lead and other toxic materials . . . ." (Id.)  Plaintiffs allege the dust poses a health hazard for children and makes their property "practically impossible to sell." (Id. ¶¶ 28, 32-35.)

Plaintiffs learned about the studies in 2007. (Id. ¶ 15.) Until then, Plaintiffs "were unaware that lead particulates were being carrie[d] in the dust blown from the [rail] yard." (Id.)  Plaintiffs allege that Defendant was aware of the lead in the dust "long before" 2004, and yet failed to disclose, advise or warn residents living near the rail yard. (Id. ¶¶ 21-22.)

Plaintiffs assert claims for nuisance, trespass and negligence based on the lead-bearing dust.  Although Plaintiffs' Second Amended Complaint also asserts claims based on the diesel

1  emissions from the locomotives, Plaintiffs agreed in their opposition
2  brief to voluntarily dismiss those claims with prejudice.  (Opp'n at
3  2:8-10.)  Plaintiffs also agreed in their opposition brief to
4  voluntarily dismiss with prejudice their request for an injunction and
5  to strike their allegation that Plaintiff Malia Benson was diagnosed
6  with cancer.  (Id. at 2:15-18.)

DISCUSSION[1]

I. Statute of Limitations Defense

    A. Nuisance

Defendant argues Plaintiffs' nuisance claim is barred by the statute of limitations since Plaintiffs should have been aware of the lead contamination more than three years before they brought this action.[2]  (Mot. at 3-4.)

A nuisance claim must be brought within three years of the date Plaintiffs discovered or should have discovered the nuisance. Cal. Code Civ. P. § 338(b); KFC W., Inc. v. Meghrig, 23 Cal. App. 4th 1167, 1180 (1994).  The statute of limitations may begin to run on the date Plaintiffs had "presumptive knowledge" of the lead contamination. Shamsian v. Atlantic Richfield Co., 107 Cal. App. 4th 967, 980 (2003). Plaintiffs are charged with presumptive knowledge if they "ha[ve] notice or information of circumstances to put a reasonable person on inquiry, or ha[ve] the opportunity to obtain knowledge from sources

---

[1] The Federal Rule of Civil Procedure 12(b)(6) dismissal standards are well known and need not be repeated.

[2] Defendant argues the "ruling on Defendant's [statute of limitations defense] . . . will turn on whether Plaintiff[s] ha[ve] pled a permanent or continuing nuisance."  (Mot. at 2:20-22.)  Plaintiffs clarify in their opposition brief that they assert a permanent nuisance claim.  (Opp'n at 4-5.)

3

1  open to [their] investigation."  Id. (citing <u>Wilshire Westwood Assocs.
2  v. Atlantic Richfield Co.</u>, 20 Cal. App. 4th 732, 740 (1993)).
3           Although Plaintiffs allege they did not discover the dust
4  contained lead until 2007, Defendant argues that Plaintiffs should be
5  charged with having presumptive knowledge in at least 2004 that the
6  dust contained lead because Plaintiffs allege the dust was blowing
7  onto their property since they purchased it.  (Reply at 17:19-19:15.)
8  Defendant argues "high levels of dust emanating from an industrial
9  area is sufficient to put a reasonable person on inquiry notice as to
10 whether there is a potential harm from that dust."  (Id. at 18:12-14.)
11 Defendant relies on <u>Mangini v. Aerojet-General Corp.</u> for this
12 argument, in which the court charged plaintiffs with presumptive
13 knowledge that defendant had discharged contaminants onto plaintiff's
14 property.  230 Cal. App. 3d 1125, 1152 (1991).  However, <u>Mangini</u> is
15 distinguishable because those plaintiffs possessed substantial
16 information sufficient to put a reasonable person on notice of
17 potential harm: a "recorded lease gave notice that defendant had
18 engaged in activities of a potentially hazardous nature on
19 [plaintiffs'] land[,] [] the Department of Justice [had] investigated
20 defendant's practices regarding disposal of hazardous waste in the
21 area[,] and [] defendant [had] asked plaintiffs for permission to
22 inspect their property."  Id.  In contrast, here Plaintiffs knew only
23 that dust was blowing from a rail yard onto their property, and no
24 facts alleged in the complaint support drawing the inference that
25 Plaintiffs should have known the dust contained potentially hazardous
26 substances like lead.  (SAC ¶¶ 15-16.)
27          Defendant further argues that Plaintiffs should be charged
28 with "presumptive knowledge" that the dust contained lead since the

4

2004 study put Plaintiffs on notice and Plaintiffs should have investigated. (Reply at 17:19-19:15.) Plaintiffs counter "[t]here was no reference to lead in the 2004 study" since that study analyzed only the diesel emissions from the locomotives, and did not analyze the dust from the rail yard. (Opp'n at 5:13; SAC ¶¶ 8, 14.)

Construing the allegations in Plaintiffs' Second Amended Complaint and the reasonable inferences therefrom in the light most favorable to Plaintiffs reveals Defendant has failed to show that Plaintiffs should be charged with presumptive knowledge about the lead in the dust prior to 2007. Accordingly, Defendant has failed to show the statute of limitations has run, and this portion of its dismissal motion is denied.

B. Trespass

Defendant argues Plaintiffs' trespass claim is barred by the statute of limitations since Plaintiffs should have been aware of the lead contamination more than three years before they brought this action.[3] (Mot. at 4-6.) A trespass claim must be brought within three years of the trespass. Cal. Code Civ. P. § 338(b).

Plaintiffs contend that 42 U.S.C. § 9658 governs their trespass claim, and provides that the statute of limitations does not begin to run until the date they "knew or reasonably should have known that [their damages] . . . were caused by or contributed to by [a] hazardous substance . . . ." (Opp'n at 6:1-20 (quoting 42 U.S.C.

---

[3] Defendant argues the "application of the statute of limitations to Plaintiffs' trespass claim will turn on whether the trespass is 'permanent' or 'continuing.'" (Mot. at 4:18-20.) Plaintiffs clarify in their opposition brief that they assert a permanent trespass claim. (Opp'n at 5:23-6:20.)

5

§ 9658(b)(4)(A).)[4]  Plaintiffs argue that although they were aware that the dust trespassed onto their property well before three years prior to this action, they neither knew nor reasonably should have known that the dust contained lead until 2007.  (Opp'n at 5-6.)

Defendant "questions" the applicability of § 9658, but does not contend that it does not apply.  (Reply at 19 n.4.)  Defendant argues that Plaintiffs should be charged with presumptive knowledge that the dust contained lead.  (Reply at 19-20.)  However, as discussed supra, this argument is not persuasive.  Accordingly, this portion of Defendant's motion is denied.

C. Negligence

Defendant argues Plaintiffs' trespass claim is barred by the statute of limitations since Plaintiffs should have been aware of the lead contamination more than two years before they brought this action.  (Mot. at 4-6.)

A negligence claim "based upon exposure to a hazardous material" must be brought within two years of the date on which Plaintiffs became "aware of, or reasonably should have become aware of[:] (1) an injury, (2) the physical cause of the injury, and (3) sufficient facts to put a reasonable person on inquiry notice that the injury was caused or contributed to by the wrongful act of another . . . ."  Cal. Code Civ. P. § 340.8(a).

Defendant argues Plaintiffs should have been aware that the dust contained lead "well before two years before the commencement of the present action."  (Reply at 21:1-2.)  However, as discussed supra,

---

[4]  Although Plaintiffs cite 42 U.S.C. § 9601(B), Plaintiffs quote § 9658 and it is apparent that the latter is the statute at issue here.

6

this argument is not persuasive. Accordingly, this portion of Defendant's motion is denied.

## II. Preemption

### A. Interstate Commerce Commission Termination Act ("ICCTA")

Defendant argues Plaintiffs' claims are preempted by the ICCTA. (Mot. at 7-10.) "Pre-emption can occur in one of three ways: express pre-emption by statute, occupation of the field, or conflict between state and federal regulation." Siaperas v. Mont. State Compensation Ins. Fund, 480 F.3d 1001, 1004 (9th Cir. 2007) (quoting Air Conditioning & Refrigeration Inst. v. Energy Res. Cons. & Dev. Comm'n, 410 F.3d 492, 495 (9th Cir. 2005)). "Express preemption occurs when Congress enacts a statute that expressly commands that state law on the particular subject is displaced." Siaperas, 480 F.3d at 1004 (quoting Gadda v. Ashcroft, 377 F.3d 934, 944 (9th Cir. 2004)).[5]

The ICCTA expressly preempts state or local regulations and state law tort claims that regulate "rail transportation," which is defined to include a "yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property . . . by rail . . . ." 49 U.S.C. § 10102(9)(A); id. § 10501(b). The ICCTA also expressly preempts such claims that regulate "the construction, acquisition, operation, abandonment, or

---

[5] Defendant argues in its reply brief that, in addition to express preemption, the doctrines of field preemption and conflict preemption also bar Plaintiffs' claims. (Reply at 12:6-17:10.) However, these doctrines were not raised in Defendant's motion, which discussed only the express preemption clause of the ICCTA. (See Mot. at 7:14-10:10.) Therefore Plaintiffs have not had an opportunity to address Defendant's field preemption or conflict preemption arguments. "It is well established that issues cannot be raised for the first time in a reply brief." Gadda v. State Bar of Cal., 511 F.3d 933, 937 n.2 (9th Cir. 2007).

discontinuance of . . . [railroad] tracks, or facilities . . . ." Id. § 10501(b)(2).

Where a tort claim would interfere with "rail transportation" or "operation" of railroad tracks or facilities, the regulation or claim is expressly preempted. See City of Auburn v. United States, 154 F.3d 1025, 1031 (9th Cir. 1998) (holding ICCTA preempted city's environmental permitting regulations which "prevented [the railroad] from constructing, acquiring, operating, abandoning, or discontinuing a [rail] line"); Guckenberg v. Wis. Cent. Ltd., 178 F. Supp. 2d 954, 958 (E.D. Wis. 2001) (holding ICCTA preempted property owners' tort claims which alleged the noise from railroad's operations on nearby tracks constituted a nuisance); Maynard v. CSX Transp., Inc., 360 F. Supp. 2d 836, 843 (E.D. Ky. 2004) (holding ICCTA preempted property owners' tort claims which alleged a railroad track caused drainage problems on their properties, since "the drainage problem . . . is allegedly being caused by the construction and/or maintenance of the tracks and crossings themselves").

However, where a tort claim is premised upon a railroad's activities on its property that have only a remote or incidental connection to "rail transportation" or "operation" of railroad tracks or facilities, but rather are "tortious acts committed by a landowner who happens to be a railroad company," the claim is not expressly preempted by the ICCTA. Emerson v. Kansas City S. Ry. Co., 503 F.3d 1126, 1130 (10th Cir. 2007) (holding ICCTA did not preempt nuisance and trespassing claims which alleged that railroad discarded railroad ties into a drainage ditch and failed to maintain the ditch, resulting in flooding on plaintiffs' properties); Rushing v. Kan. City S. Ry. Co., 194 F. Supp. 2d 493, 500-01 (S.D. Miss. 2001) (holding ICCTA did

8

not preempt nuisance and trespassing claims that railroad company improperly constructed an "earthen berm" to prevent noise from escaping railyard, and berm caused flooding on plaintiffs' properties); see also Fla. E. Coast Ry. Co. v. City of W. Palm Beach, 266 F.3d 1324, 1331 (11th Cir. 2001) ("Congress narrowly tailored the ICCTA pre-emption provision to displace only . . . those state laws that may reasonably be said to have the effect of 'manag[ing]' or 'govern[ing]' rail transportation, while permitting the continued application of laws having a more remote or incidental effect on rail transportation." (citations omitted)).

Defendant argues that Plaintiffs "seek[] liability based upon the lead content of the soil on [the rail yard] and, as such, would be regulating the services and operations that [Defendant] provides." (Reply at 9:1-2.) Plaintiffs counter "to request relief from the effects of wind blown lead particulates from [Defendant's rail] yard is . . . ancillary to the railroad's operation and is consistent with the ICCTA." (Opp'n at 14:4-9.) Plaintiffs allege that the dust containing the lead is blown from Defendant's rail yard, not emitted from its locomotives. (SAC ¶ 15.) Construing the complaint and the reasonable inferences drawn therefrom in the light most favorable to Plaintiffs reveals they have alleged that the dust blowing from Defendant's rail yard onto Plaintiffs' property has only a remote or incidental connection to "rail transportation" or "operation" of railroad tracks or facilities. Accordingly, Defendant has failed to show for purposes of its dismissal motion that Plaintiffs' claims are expressly preempted; and this portion of the motion is denied.
///

B. Commerce Clause

Defendant argues Plaintiffs' claims are preempted by the Commerce Clause of the United States Constitution since Plaintiffs' suit "seeks to impose requirements for . . . dust control measures on the perimeter of a rail yard and 'warnings of adverse health effects' . . . [and] 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'"  (Mot. at 12:17-21 (quoting Pike v. Bruce Church, 397 U.S. 137, 142 (1970)).)

"[T]he Constitution does not exclude all state power to regulate commerce. . . . Particularly in matters of local concern, the states may regulate commerce even if there is an incidental effect on interstate commerce." Burlington N. R.R. Co. v. Dep't of Pub. Serv. Regulation, 763 F.2d 1106, 1114 (9th Cir. 1985) (citing S. Pacific Co. v. Arizona, 325 U.S. 761, 766-67 (1945)).  "The question here is [] whether a [] jury verdict in [Plaintiffs'] favor . . . would violate the Commerce Clause by burdening interstate commerce to a degree that clearly exceeds the local benefits . . . ." Stone ex rel. Estate of Stone v. Frontier Airlines, Inc., 256 F. Supp. 2d 28, 46 (D. Mass. 2002).  The burden analyzed is not limited to the burden imposed by Plaintiffs' claims alone, but includes an "aggregate analysis" of the burden imposed if every state permitted like claims. U & I Sanitation v. City of Columbus, 205 F.3d 1063, 1069 (8th Cir. 2000).

Defendant argues the Commerce Clause preempts Plaintiffs' claims because "[i]f each jurisdiction was free to set via tort suit their own . . . yard dust emissions regulations, the burden o[n] interstate commerce would be beyond severe."  (Mot. at 13:2-4.)

Plaintiffs counter that "[t]o require [Defendant] to remediate, mitigate and keep lead particulates in the dust from

blowing from the [rail] yard onto [Plaintiffs'] property . . . is not an interference with interstate commerce." (Opp'n at 14:23-26.) "Courts have long held that the Commerce Clause does not impair states' authority to establish reasonable regulations for the protection of the health, lives, and safety of the people within their borders." Stone, 256 F. Supp. 2d at 46. Further, it is not apparent from Plaintiffs' complaint that exposing rail road defendants to liability in tort law for lead dust blown from rail yards onto neighboring properties would impose an undue burden on interstate commerce. See id. at 46-47 (holding Commerce Clause did not bar state law tort claim asserting airline was negligent for failing to have defibrillators aboard airplane, since even though a verdict for plaintiff would "essentially . . . impose[] a requirement that airlines carry defibrillators" the "burden on interstate commerce . . . would not be excessive" in light of the state's "significant" interest in protecting its citizens' health). Accordingly, Defendant has not shown that the Commerce Clause preempts Plaintiffs' claims; this portion of the motion is also denied.

III. Motion to Strike

Defendant moves to strike Plaintiffs' request for "compensation for the fear for the[ir] health and safety . . . and for fear of risk to an infant . . . ." (Mot. at 15:11-13.) Plaintiffs request such damages for each of their claims, alleging they "have suffered mental suffering occasioned by the fear for the health and safety of each other and their reasonable belief of threat to an infant, resulting in the postponement of having a family." (SAC ¶¶ 35, 46, 54.)

11

"[Mental suffering] damages are generally available under tort claims for negligence, trespass, and nuisance." Palmisano v. Olin Corp., 2005 WL 5288146, at *2 (N.D. Cal. May 18, 2005); see Acadia, Cal., Ltd. v. Herbert, 54 Cal. 2d 328, 337 (1960) ("[R]egardless of whether the occupant of land has sustained physical injury, he may recover damages for the discomfort and annoyance of himself and the members of his family and for mental suffering . . . when such discomfort or suffering has been proximately caused by a trespass or a nuisance."). Therefore, "Plaintiffs are not precluded from seeking compensation for [mental suffering] resulting from general disruption to their lives, loss of use of their property, annoyance, inconvenience, and the like caused by having to deal and put up with the allegedly toxic [dust]." Palmisano, 2005 WL 5288146, at *1. The motion to strike these damage allegations is denied.

"However, recovery for anxiety resulting from fear of developing some disease from [] exposure [to toxic material] is not recoverable unless" Plaintiffs meet the requirements stated in Potter v. Firestone Tire & Rubber Co., 6 Cal. 4th 965 (1993). Palmisano, 2005 WL 5288146, at *2. Under Potter, to recover mental suffering damages for Plaintiffs' fear that they or their future children may develop a disease from being exposed to the lead in the dust Plaintiffs must show either (1) "it is more likely than not that [Plaintiffs] will develop [a disease] in the future due to the toxic exposure" or (2) "[D]efendant has acted with oppression, fraud or malice, [and] . . . [Plaintiffs'] fear of [developing a disease] is reasonable, genuine and serious . . . ." Potter, 6 Cal. 4th at 997-99.

Plaintiffs allege that "[t]he levels of lead would pose a hazard and raise concern to any family with children or desiring children." (SAC ¶ 32.) Plaintiffs fail to allege facts showing it is more likely than not that the lead in the dust from Defendant's rail yard will cause them or a future child to develop a disease. Plaintiffs also fail to allege facts showing a reasonable, genuine and serious fear that they or a future child may develop a disease from the lead in the dust.[6] Accordingly, Defendant has shown that Plaintiffs' request for mental suffering damages for their fear that they or their future children may develop a disease from being exposed to the lead in the dust should be stricken; this portion of the motion is granted.

## CONCLUSION

Since Plaintiffs agreed to voluntarily dismiss with prejudice their diesel emissions and injunctive relief claims, these claims are dismissed with prejudice. The remainder of Defendant's dismissal motion is denied. Since Plaintiffs agree to strike their allegation that Plaintiff Malia Benson was diagnosed with cancer, this allegation is stricken. Defendant's motion to strike Plaintiffs' request for mental suffering damages for their fear that they or their future children may develop a disease from being exposed to the lead in the dust is granted.

Defendant requests that if its dismissal motion is denied, "Plaintiffs [should] be required to file a Third Amended Complaint

---

[6] Although Plaintiffs allege the 2004 study found that "living within 300 feet of [Defendant's rail] yard . . . increased the cancer risk to 950 chances in a million," the 2004 study analyzed only the diesel emissions from the locomotives and Plaintiffs have agreed to dismiss their claims concerning these emissions. (SAC ¶ 13; Mot. at 2.)

reflecting" Plaintiffs' agreement to voluntarily dismiss their diesel emissions and injunctive relief claims and to strike their allegation that Plaintiff Malia Benson has cancer. (Reply at 5 n.1.) However, Defendant has not shown this additional filing is required.

IT IS SO ORDERED.

Dated: July 24, 2008

_____
GARLAND E. BURRELL, JR.
United States District Judge